Antonia Cabassa de Fajardo et al., Petitioners, v. District Court of Mayagüez, Respondent.

No. 984. Argued July 16, 1934.—Decided July 28, 1934.

352

*José A. Puventud* and *Miguel A. García Méndez* for the petitioner. Mrs. Cabassa de Fajardo; *C. Ruiz Nazario* for Rosalinda and Emilia Fajardo Dávila; *Oscar Souffront* and *A. Ortiz Toro* for the plaintiff in the main suit and several of his brothers.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

José Angel Fajardo Dávila requested from the District Court of Mayagüez the reading and protocolization of a document which constitutes, as is alleged, the holographic will of Don Mateo Fajardo Cardona, who died in the city of Mayagüez on February 6, 1934. It was alleged in the petition that until the 27th day of June, 1934, the petitioner did not know that his father Mateo Fajardo Cardona had executed a will, but that while he was on said day at the offices of the Central Eureka examining, searching, and reviewing all the papers and documents found in such office, looking for those that might be related to his deceased father Don Mateo Fajardo Cardona, such as he had been requested by Miguel Angel García Méndez, Esq., attorney for Doña Antonia Cabassa Texidor, and that while he was accomplishing such search on said 27th day of June, 1934, he found a yellowish sealed envelope, measuring 12 inches long by 9 inches wide, on the upper left-hand corner of which the following is written with pencil, in the ancestor's handwriting: "José A. Fajardo" and thereunder the following words: "Deliver to him"; that the petitioner proceeded to open said envelope having found therein eight sheets of paper written with ink on both sides, with the exception of the last one, in the handwriting of the ancestor Don Mateo Fajardo Cardona, and constituting the holographic will of said Mateo Fajardo Cardona, dated in the

city of Mayagüez, Puerto Rico, on April 26, 1926, said document being folded in two, and bearing on the reverse side of the last page the word "will" written with pencil in the handwriting of the testator himself, each and every one of the pages of said will being signed with the authentic signature of the ancestor Don Mateo Fajardo Cardona.

The petitioner requested the summoning of the children of Don Mateo Fajardo Cardona, and of his widow, that they would appear on the day which the court might set in order to proceed with the identification, reading, and protocolization of the will, once the requisites of the law were complied with. On July 5, 1934, the hearing of the said petition was commenced, the petitioner José A. Fajardo Dávila and his brothers Mateo, Carlos, and María Luisa Fajardo Dávila being present, assisted by their attorney Oscar Souffront. The widow of Mr. Mateo Fajardo Cardona, Doña Antonia Cabassa, was represented by the attorneys Miguel A. García Méndez and José A. Poventud, and the daughters of said ancestor, Rosalinda and Emilia Fajardo Dávila were represented by their attorney Clemente Ruiz Nazario.

The attorney Poventud attacks the jurisdiction of the court for the identification of the will. The attorneys García Méndez and Ruiz Nazario make it clear that they appear without submitting themselves to the jurisdiction of the court in this proceeding, but only for the purposes of complying with the summons made by the court.

Mr. Ruiz Nazario declares that inasmuch as the parties he represents are entitled, according to the last paragraph of Section 642 of the Civil Code, to make such observations as they may deem proper with regard to the authenticity of the will, and his clients have not had an opportunity to review that document and make such proper observations, he prays the court to direct a recess in order that said will may be shown to his clients for the purpose of examining and being instructed regarding the same. The judge marked and paraphed the alleged will and ordered the delivery

thereof by the clerk to the interested parties that they might examine the same in his presence. The introduction of evidence was later proceeded with. The witnesses Alfredo Arnaldo Sevilla, César A. Gómez, and Francisco Llavat appear to have testified, having been examined by the attorney Oscar Souffront. The stenographic record taken during the opening and reading of the alleged will on July 5, 1934, does not disclose any intervention whatsoever by said interested parties or their attorneys during the examination of the witnesses.

Mrs. Antonia Cabassa, widow of Mateo Fajardo Cardona, and Rosalinda and Emilia Fajardo Dávila, based on the facts that they were not allowed to make observations and cross-examine the witnesses at the hearing of the petition, and that the lower court refused to enter in the record the objections and cross-examination of their attorneys, prayed this Court on July 6 of the present year, that a writ of certiorari be issued to review the proceedings carried out before the District Court of Mayagüez. On July 7 this Court issued the writ sought.

As it appears from the stenographic record, the hearing was resumed on the 6th and 7th days, as previously set by the court. The attorney Mr. Ruiz Nazario stated that at the proper time he requested in the name of his clients that the latter be allowed, before the examination of the witnesses, to compare the documents, through handwriting experts, and make the advisable allegations with regard to the authenticity of the document, in view thereof, that the court would grant leave to ask several questions to the experts in regard to the question of authenticity, and that the court refused and allowed neither the observations of the attorney, nor the decision rendered by the court, nor the exception taken by the parties, to appear in the record of the hearing. Mr. Ruiz Nazario likewise stated that the court allowed no questions whatsoever to be asked to the witnesses who were produced by the petitioner; namely, Messrs. Alfredo Arnaldo

Sevilla, César A. Gómez, and Francisco Llavat, and that the interested parties were deprived of the right to cross-examine said witnesses as to their capacity to serve as such and as to whether certain parts and words, figures and digits appearing in the document referred to, are or do not purport to be written in the testator's handwriting. The court declared that what the attorney stated is a truthful exposition of the happenings during the hearing held the day before.

The attorney Mr. Poventud agreed with the statements of Mr. Ruiz Nazario and stated for the record, the observations which, as he declares "arise upon a mere perusal of the paper presented in this case by the petitioner, which is entitled holographic will." Mr. Poventud requested the parties represented by him, by Ruiz Nazario, and García Méndez, be allowed to cross-examine the three witnesses of identification "who already testified on the part of the petitioner in this proceeding." At first the court denied the request. Later on Mr. Souffront stated in the name of his clients that he consented to have the witnesses examined anew in relation with the observations made by the interested parties by means of a stipulation of all the parties. Mr. Poventud asserted his right to cross-examine the witnesses and after the parties were heard, the following order was issued by the judge:

"The court orders that the testimony given by the three witnesses who testified with respect to the signature and the handwriting of the document which was presented as the will of Don Mateo Fajardo Cardona be annulled, and that the witnesses be summoned anew to appear tomorrow at nine o'clock. Those witnesses will be informed about all the observations which have been made and which have been entered in the record, and then the cross-examination will be proceeded with by the opposing parties."

The following day, July 7, this order was modified as follows:

"The court will amend its order in so far as it annuls the testimony given by these witnesses. That is to remain in the record, namely

the testimony they gave upon being examined. Now they will be allowed to testify as regards the observations made by the attorneys for the opposing parties."

At the session held on July 6, Mr. Ruiz Nazario announced for the record the presence of the chemist Mr. Angel M. Pesquera and of the handwriting expert Mr. Casto Vega, and prayed for the examination of the alleged will in the presence of one of the attorneys for the parties and the clerk, so as to make observations regarding the authenticity and handwriting thereof, establishing comparisons with undoubted documents of the ancestor, that the court might be in conditions to decide. The examination of said document was allowed in the table of the jury.

Upon the session being continued on the 7th, Mr. Poventud alleged that the court had lost its jurisdiction to proceed with the reading of the alleged will and to carry out the proceeding, inasmuch as the same was filed on the 2nd day of July and the carrying out of the proceedings was set for the 5th day, notwithstanding that the 3rd was a working day and the hearing could have been held on such a day.

Although this jurisdictional question has not been discussed by the attorneys for the petitioners either in their careful brief or in their verbal argument before this Court, however, we proceed to pass upon the same inasmuch as it was adduced in the petition and was insistently set forth in the lower court. The respondent argues that as the petition for the reading, identification and protocolization of the will was filed on July 2, the period of two days provided by Section 641 of the Civil Code as the setting for carrying out the proceedings did not expire until the 5th of said month, for the 4th of July, being a holiday, had to be excluded and could not be taken into consideration. Even though the law provides that the day for carrying out the proceedings shall be fixed within two days at the latest, the court is not precluded from exercising its discretion in making said setting or in extending the same, when the circumstances so require.

As we said in *Más et al.* v. *Borinquen Sugar Co.*, 18 P.R.R. 299, this discretional power resides inherently in the courts, and such causes as sickness, death, absence, disqualification, or the like, may make it indispensable to set the hearing for a subsequent date.

After the preceding question had been set forth and the order of the court regarding the testimony of the witnesses modified, the reading to the latter of the observations made by the parties was directed. Mr. Poventud offered additional observations. Mr. Souffront also expressed his wishes to make some observations. Mr. Poventud opposed on the ground that under the law, such observations should be made by the petitioner through his witnesses. Mr. Souffront was authorized to present his observations.

The examination of the witnesses was begun. Mr. Alfredo Arnaldo Sevilla testified in the first place. Mr. Poventud undertook to examine the witness, whose testimony we copy in part so as to give an idea of the character of the objections, the extent of the examination, and the grounds on which the court based to refuse the asking of certain questions.

"Mr. Poventud: (To the witness Mr. Arnaldo). My colleague Arnaldo, did you say you knew the signature of the alleged testator Don Mateo Fajardo Cardona?

"A. Yes, I know it.

"Q. Can you tell the Hon. Judge the reason therefor?

"A. I have observed Don Mateo's signature during a good many years and I have the exact idea as to whether or not I am seeing his signature.

"Q. Do you possess any document of his? Are you a notary?

"A. Yes, sir; he has executed many of them before me.

"Q. Do you have those original documents in your office?

"A. Yes, sir.

"Q. Have you examined this paper which was presented to you yesterday?

"A. Yes, sir.

"Q. Please take it in your hands and take a look at that page, which should be the first.

"A. Yes, it is the first page.

"Q. See if you observe any writings in pencil and in ink . . .

"Mr. Souffront: we object.

"Judge: The witness may testify only as to the handwriting and the signature.

. "Mr. Poventud: And what about our observations . . .?

"Judge: No, he is only a witness of the identity of the signature and the handwriting. The erasures or the like have nothing to do. The court will now decide the question for once to avoid its being presented further. He may only testify regarding the handwriting and the signature.

"Mr. Poventud: And what about the striking outs?

"Judge: No, even if everything has been stricken out, if it has been changed, the witness has nothing to do. He is only concerned with whether that is the authentic handwriting and signature. That will come in an ordinary suit, but at this moment we are only concerned with the handwriting and the signature of the person who executed the will.

"Mr. Poventud: But what I want to know is whether those numbers are the testator's.

"Judge: O yes! That is indeed in order.

"Q. Is there a number on the first page?

"A. There is a number or something like a number at the beginning of the will.

"Q. How is it written?

"A. With pencil.

"Q. And what about the rest of the will?

"A. It is in ink.

"Q. Can you assure to the court whether such a number is in the testator's handwriting?

A. I cannot say.

"Q. And what about the word 'twenty' of the day of the month appearing in that will?

"A. Twenty-six . . .

"Q. Will you tell me the impression? . . . Can my colleague tell whether he observes that the word 'twenty' corresponding to the day of the month is in parenthesis, and whether it is in the testator's handwriting?

"Mr. Souffront: We object to the question.

"Judge: The question is allowed as to whether the 'twenty' is in the testator's handwriting.

"Q. Yes, whether the 'twenty' is in the testator's handwriting.

"A. Yes, the word 'twenty' is the testator's.

"Q. And the parenthesis?

"Mr. Souffront: We object.

"Judge: Objection sustained.

"Mr. Poventud: We take an exception.

"Q. Kindly tell me, my colleague, whether you can observe from a mere perusal of the word 'twenty' corresponding to the year in that will, on the 4th line, if there is anything written over that word . . .

"Mr. Souffront: We object.

"Judge: Objection sustained. Only the handwriting and the signature.

"Mr. Poventud: But I do not want to suggest to the witness whether the word 'thirty' is the testator's.

Judge: No, not that, only and exclusively the handwriting and the signature.

"Mr. Poventud: We take an exception.

"Q. Please take a look at page 4, . . . is it numbered?

"A. No, sir, it is not numbered.

"Q. Kindly see if you can observe the figure '6,000' in ink.

"A. Yes, sir, it is in ink.

"Q. What do you see over that figure?

"Mr. Souffront: No, not that.

"Mr. Poventud: I do not want to suggest the answer to him.

"A. The number is Mateo's.

"Q. Does not the witness observe (for the sake of the record) something written over an eight?

"Judge: No, not that.

"Mr. Poventud: We take an exception.

"Q. Will my colleague kindly turn to pages 8 and 9?

"A. Yes, sir.

"Q. Please say whether there is any striking out in that page.

"Mr. Souffront: We object to the question.

"Judge: Objecton sustained. The question should not be addressed to the witness.

"Mr. Poventud: We take an exception. It seems to me that the best thing to do in this situation is to state in the record that we insist on asking the witness a question regarding each and every observation which the court authorized us to render in this case and which is proper, as we already attempted to show, with regard to the witnesses of identification that may be called.

"Judge: The court denies the motion.

"Mr. Poventud: We take an exception. Would not the court allow us to bring expert evidence?

"Judge: Oh, no! When the moment comes, after considering everything, and before rendering any decision, if the court agrees in that the document is doubtful, then that would be in order, at the request of the parties. But such evidence cannot be introduced at this moment; that depends on whether the court is of opinion that it is provident."

Mr. Poventud stated that he had read the rest of the observations in order to examine the witness, and that the court excluded the questions asked to that effect. The judge admitted the exclusion of any question "not relating to the signature and handwriting of the testator."

The foregoing suffices to show that the lower court constrained the examination by the attorney Mr. Poventud to the handwriting and signature of the alleged testator, thereby preventing that other questions be asked as to other particulars. The petitioners feel aggrieved and urge that the court's decision limiting the examination refused them the right to be heard, the equal protection of the laws, and the due process of law. Their attorneys so stated on appearing before this Court and they so declare in their brief, as they think that the court *a quo* persisted in refusing to acknowledge their rights on resuming the hearing which took place on the 6th and 7th days. They cite in support of their conclusions the provisions of the Civil Code relating to the holographic will and the commentators Scaevola and Manresa. Some decisions of the American courts are cited in order to show that the object of the summons is to afford the opportunity to appear and be heard and that if a hearing is refused, the summons becomes academic and to no purpose. Sections 641, 642 and 643 of the Civil Code, 1930 edition, prescribe as follows:

"Art. 641.—After the holographic will has been presented and the death of the testator properly proven, the district court shall proceed to the reading thereof in public and on the day and hour fixed therefor, within two days at the latest, opening it if it be a

sealed will, and the judges of the court, together with the notary, shall rubricate it on all its leaves, and shall immediately proceed to prove its identity by means of three witnesses who are acquainted with the handwriting and signature of the testator and who depose that they have no reasonable doubt that the will was written and signed by the testator's own hand.

"In the absence of competent witnesses, or if those examined have any doubts, and provided the district court deems it proper, handwriting experts may be employed for the purpose of comparison.

"Art. 642.—For carrying out the proceedings mentioned in the preceding section, the surviving spouse, if there be one, the descendants and the ascendants of the testator shall be summoned as soon as possible, and in the absence thereof, his brothers and sisters.

"If the said persons do not reside within the judicial district or if their existence be unknown, or if they be minors or incapacitated persons without legitimate representation, the department of public prosecutions shall be cited.

"The persons cited may be present at the time such proceedings are carried out and may make, at the time, verbally, such observations as they may deem proper with regard to the authencity of the will.

"Art. 643.—If the district court shall consider that the identity of the will has been proven, it shall order that the same be protocolled, with a certified copy of the process executed, in the register of the notary appointed by the interesed party, and said notary shall issue such copies or attestations as may be proper, which shall constitute sufficient title for the total or partial recording of the real property of the inheritance, in the registry of property.

"If there shall be no agreement between the interested parties, or if the notary appointed by them shall be disabled by any of the reasons prescribed by the notarial law, the court shall then freely appoint a notary with office open within the district.

"Whatever the decision of the district court may be, it shall be carried out, notwithstanding objection, but the rights of the persons interested to enforce such rights in the proper suit shall be reserved."

In his *Comentarios al Código Civil,* volume 12, pages 400, 401, and 402, Scaevola says as follows:

" 'A *proper observation*' with regard to the authenticity of the will may unquestionably be that which any of the said interested parties may make by alleging that said particular will not be reliably

proved by means of witnesses or experts, for example the nearest relatives of any of the heirs or legatees of an important share, or persons being in relations of close and intimate . friendship with them.

"If he is to issue the writ of approval or of disapproval of the proceedings in compliance with his conscience, and with the true outcome of said proceeding, such as Sec. 693 entrusts him to do in directing him that he shall order the protocolization *'if he considers that the identity of the will has been proven,'* the Judge cannot but assay, of course, within the limits assigned to the general perfection of *ex parte* proceedings, the value of the probatory elements propounded to him or which he may contribute *ex officio* to the record.

"If the legal doctrine were the opposite, by an inexcusable ignorance of the court and under the only assertion of the person presenting the will, who, as we have already said, may be interested in the estate and may have conflicting rights respecting the others, the proceedings of undeniable importance and value to which Sections 690 to 693 of our Code refer, would be carried out as a mere routine and as a simple matter of course.

"We already know that the writ which terminates the proceeding for protocolization may be reviewed in the proper declarative suit, affording a more solemn and warranted procedure to all the interested parties. But, even though this is so, and refers, as it undoubtedly does, to other requirements of the proceedings, is the proof of the authenticity of the holographic will to become a trivial matter, when such a proof ought to have a fundamental importance, even greater than regarding the manner of incorporating oral wills and codicils in a deed, the opening of the testamentary memoranda, for the very reason that such new way of making a will, being of such a dangerous and delicate nature, has its most reliable and useful complement in judicial proof?

"Nor do we forget that the Judge may, under his responsibility, disregard what may be sought in those *'proper observations,'* the same as when they deal with the objection to the approval or disapproval of the proceedings carried out; because in these proceedings the court has, by sec. 693, an exclusive mission, although controlled by reasons of prudence and of ample judgment, inspired in the consideration of whether or not the authenticity of the presented writing has been sufficiently proved. But we establish the *possumus,* the power in the relatives and in the district attorney to intervene in the indicated manner, for example, and the legal possibility that

the Judge may have the means to admit such particulars without violating any substantive or adjective law, in order to attain the end which he should also pursue with equal or even greater determination.

"The repeated *'proper observations'* may likewise consist in the introduction of documents or proofs that may be offered by said relatives or the district attorney. Section 1813 of the civil procedural law, comprising one of the general provisions regarding *ex parte* proceedings, anticipates the case in which somebody, having a lawful interest in the proceeding, may request to be heard therein, in which case he shall be granted a hearing, and the proceeding shall be exposed to him in the office of the actuary for a short period to be fixed by the Judge, according to the circumstances; and in compliance with the following Section 1814, the person bringing the proceeding may also be heard, when it may be provident. And so the persons intervening in the proceeding to file in protocol the holographic will, will not be at a disadvantage."

On page 394 of the same volume, and referring to the last paragraph of Section 693 of the Spanish Civil Code, also equivalent to the last paragraph of Section 643 of our code, the illustrious commentator expresses himself as follows:

"The manner in which the wording of the last paragraph of said provision is conceived leads to the conclusion that the Judge must always, or at least in the majority of the cases, resort to expert opinion to acquire knowledge about the authenticity of the holographic will, even though the testimony of the witnesses may have already been inserted in the record of the proceeding. The prudence with which the Judge should act in transcendent decisions so demands, and the delicate and dangerous nature of the holographic will makes it necessary for a greater guaranty of all the interests therein involved.

"In fact, the comparison of handwritings by experts may be a facultative affirmance of the testimony of lay witnesses, and a means to remove the last doubts that might occur to the judge about the authenticity which he endeavors to find out and declare. The phrase of the mentioned last paragraph, *'provided the Judge deems it proper'* was intended therefor, whether or not there have been witnesses and whether or not the latter were in doubt as to the particulars about which they are asked."

We see that Scaevola tells us that the judge called upon to decree the protocolization of the will if he considers that its identity has been proven, cannot but assay, within the limits assigned to the general perfection of *ex parte* proceedings, the value of the probatory elements propounded to him or which he may contribute *ex officio* to the record. This commentator, going even farther, is of opinion that the proper observations may consist in the introduction of documents. Scaevola does not say, however, that the right to make observations imposes the duty upon the judge to authorize an extensive examination as to questions not related to the handwriting and signature of the testator. How is the identity of the will to be proved? The code clearly prescribes the manner: by means of three witnesses who are acquainted with the handwriting and signature of the testator and who depose that they have no reasonable doubt that the will was written and signed by the testator's own hand. The text of the statute seems to indicate that the witnesses are summoned to testify regarding the handwriting and signature and not for anything else. The interested parties may make such observations as they may deem proper, but as regards the witnesses, it is evident that they cannot be led, without leave of court, beyond the limits prescribed by the law itself. If the judge pleases to allow a cross-examination, he incurs in no error in deciding that the cross-examination must evolve and develop within the limits prescribed for the direct examination.

In his commentaries to the Spanish Law of Civil Procedure, Mr. Manresa expresses himself thus:

"Testimony of witnesses.—They must be three who are acquainted with the handwriting and signature of the testator, as has been said: they shall be individually examined under oath in the ordinary way, exhibiting the will to them that they may depose, if they think so, that they have no reasonable doubt that it was written and signed by the testator's own hand. It shall be convenient that they should express the reasons or grounds they may have, which should be

stated in writing, for being acquainted with the handwriting and signature of the testator. The summoned relatives who may appear, may hear these declarations and may make, at the time, verbally, such observations as they may deem proper with regard to the authenticity of the will (Sec. 692 of the Code) to which observations the witnesses must answer.

"Provided the judge deems it proper, he may direct that handwriting experts be employed for the purpose of comparing the writing to make sure about the authenticity of the will, and he should do so when the witnesses examined are in doubt, or in the absence of such witnesses as are acquainted with the handwriting and signature of the testator. The experts shall be exclusively appointed by the judge, who will make the comparison himself, as Section 1963 of the law provides for an analogous case, and the procedure indicated in the formularies for closed wills shall be followed.

"If the judge considers that the identity or authenticity of the will has been proven, he shall issue an order directing the same to be filed in protocol, together with a report of the proceedings carried out, in the registry of the notary residing in the notarial district, or if there be more than one, in that of the corresponding one according to turn, by whom the proper copies or attestation shall be given to the interested parties, as has been said in the formularies for closed wills. Otherwise he shall refuse to allow the will to be filed, as ordered in Sec. 693 of the Code.

"No remedy whatsoever is afforded against said order, whether it grants or denies the protocolization, and must be carried into effect notwithstanding any opposition, but the interested parties shall not be thereby precluded from enforcing any right they may have in the premises by the appropriate declarative action, as is also directed in said section." 6 Manresa, Comentarios al Código de Enjuiciamiento Civil Español, p. 406, 407.

It is inferred from the words of Manresa and Scaevola that the person in charge of decreeing or refusing the protocolization of the will is the one called upon to decide, within a sound discretion and according to the circumstances of the case, the scope to be embraced by the proceeding in order to satisfy his conscience as a judge. We agree in that even though an *ex parte* proceeding is involved, the carrying out of the proceeding may be broadened so that all the interested

parties may, without denaturing the proceeding, furnish their intellects and the court may receive the benefit thereof before coming to a conclusion. However, as we have said, this is a function to be performed by the judge in the exercise of his discretional powers.

In *Ex parte Vázquez*, 34 P.R.R. 234, this court declared that the protocolization of a holographic will is rather a matter of voluntary jurisdiction. In *Ex parte Collazo*, 45 P.R.R. 592, it was held that an order granting or denying the protocolization is not appealable, and it was said:

"It is true that this step is of great importance. We have already seen that by express provision of the law a copy shall constitute a sufficient title for the recording of the real property of the inheritance in whole or in part, in the registry of property, but the effect is also expressly limited by law to the acknowledgment forthwith, of the identity of the document, without prejudice to the rights of the persons that might be affected who may enforce them by appropriate action."

From the opinion in that case we now reproduce two paragraphs of the commentator Manresa therein copied:

" 'Regarding the notice which Section 692 requires to be given to the persons referred to therein, we have nothing to say, as this guarantee needs no comment, since those persons are the ones primarily concerned with the establishment of the identity and legitimacy of the will, they being by law entitled to the inheritance in case the protocolization of said will is denied. It is only natural and reasonable that if said persons be present at the protocolization proceedings, they may make orally any observation they may desire to submit with respect to the authenticity of the will, since they are called for that very purpose, and said section so provides.

" 'But it should be borne in mind that although the judge is to take into account said observations in reaching a conclusion as to the identity of the will, although they may be made by way of opposition and although stated in writing, such opposition can not in any case have the effect of converting an *ex parte* proceeding into a contested proceeding nor of preventing the judge from rendering the order he deems proper either granting or denying such protocolization. Whatever the decision it shall be carried into effect, notwithstanding

any opposition, but the interested parties shall not be thereby precluded from enforcing any right they may have in the premises by appropriate action, as is provided in the second paragraph of Section 693. Said action attacking or maintaining the identity and validity of the will, must be, as a general rule, the ordinary action of greatest import (*mayor cuantía.*) 5 Manresa, Comentarios al Código Civil, 511, 519.' ''

From volume 29, page 767, of the *Enciclopedia Jurídica Española,* we take the following paragraph:

"We deem it convenient to observe: 1, that whatever may be the decision of the judge, it shall be carried into effect, notwithstanding any opposition, but the interested parties shall not be thereby precluded from enforcing any right they may have in the premises by appropriate action (Sec. 693); 2, that no appeal lies therefrom because of that reason and because an act of voluntary jurisdiction is dealt with regarding a matter that may be tried anew in an appeal from the decision of the Court (*Audiencia*) if the case had been brought to its consideration on appeal from the judgment rendered by the judge; 3, although the will were not filed in protocol, the parties feeling aggrieved by its provisions are not thereby precluded from supporting its validity or from judicially attacking the same as being null."

Discussing the precedural rules to be applied to the proceeding for protocolization of a holographic will, Sánchez Román says as follows:

"It is true that Sec. 691 refers to the case of presentation of a holographic will and seems to contain in its text the procedural rules to be observed in said presentation, which are completed by the citation of certain persons to whom the following section refers; in other words, that all the procedure fixed by the Code is contained, in reality, in said Sec. 691, together with that addition of Sec. 692, until the time of judicial decision and the effects thereof, to which Sec. 693 is reduced. Those procedural rules of Sec. 691 are limited to the following:

"1. Presentation of the holographic will.

"2. Proof of the death of testator.

"3. Opening of the will by the judge, if it be a sealed will.

"4. Paraphing of the will by the judge, together with the actuary, on all the leaves in which the same may be contained.

"5. Proof of its identity by means of three witnesses who are acquainted with the handwriting and signature of the testator, who shall depose that they have no reasonable doubt that the will was written and signed by the testator's own hand.

"6. In the absence of competent witnesses, or if those examined are in doubt, and provided the judge deems it proper, handwriting experts may be employed for the purpose of comparison.

"7. And for carrying out the above mentioned proceedings, there may be added, according to sec. 692, the notice to be given, as soon as possible, to the surviving spouse, if there be one, to the legitimate descendants and ascendants of the testator, and in the absence thereof, to his brothers and sisters, or to the prosecuting attorney when the persons hereinbefore named do not reside within the judicial district, or ·if their existence be unknown, or if they be minors or incapacitated persons without legitimate representation, all the persons cited being at liberty to be present at the time such proceedings are carried out and to make, at the time, orally, such observations as they may deem proper with regard to the authenticity of the will." Sanchez Román, *Derecho Civil,* volume 6, p. 376 and 377.

On pages 380 and 381 of the work referred to, the same author says:

"As has been said, the rights which Sec. 692 expressly acknwledges to the persons cited in consequence of the citation, are only two : namely, *to be able to be present* at the time of carrying out the protocolization proceedings, which means that their attendance thereto is not essential nor imperative, but potestative, their absence after being summoned not involving the nullity thereof; and to participate therein only in so far as *to make, at the time, orally, such observations as they may deem proper with regard to the authenticity of the will,* which contemplates no such thing as a contest, nor much less that these observations may overstep their limits and their concrete and exclusive finality, which is to find out the elements of information with regard to said authenticity, whatever may be the right to attack the decision which the judge may render granting or denying the identity and protocolization of the will. Said decision shall be binding and shall be carried into effect, although there be interested parties which may contradict the same or be opposed to it, which parties shall be precluded from submitting their objection and enforcing their right, except *outside, of* and *after* the proto-

colization proceeding, and in the *proper suit,* as Section 693 provides. This means, in brief, that said protocolization proceeding, evidently *ex parte* in nature, will never turn into a *contested* case, and that any objection shall be submitted by separately instituting the proper suit.''

And finally, in its judgment of January 28, 1914, the Supreme Court of Spain says that ''the purpose of protocolization being to ascertain only one formal requisite, namely, the identity of the handwriting and signature of the testator, it is evident that if in the document which, according to its wording, has all the characteristics of a holographic will, . . . directions affecting the validity or involving the nullity thereof are forthwith detected, both with respect to the formalities required by Section 688 of the cited Code, and to causes going to the substance or contents of its clauses or provisions, said directions may be set forth by the persons that might be thereby affected, by bringing the proper action to obtain such declaration of nullity, since the protocolization sought can have no effect, as is expressly acknowledged in Section 693, inasmuch as, whether or not the same is granted, the right is always reserved to the interested parties to be enforced in the proper suit, the ground for this provision being the principle of law that what is null in its origin, as being contrary to law, cannot be confirmed by a mere ritual of procedure.''

In the instant case the court allowed the petitioners to examine the alleged will together with their experts. The observations made by their attorneys reveal a careful study of the document referred to. The petitioners contest the will on the ground that they were not allowed to cross-examine the witnesses on commencing to carry out the proceedings and that neither were they allowed to avail to this right with due extent on resuming the hearing. The record shows that the interested parties were authorized to examine the witnesses on the handwriting and signature of the alleged testator. We are of opinion that the lower court has discretion to regulate the carrying out of the proceedings and

370

that in the exercise thereof, it may allow to the interested parties all such participation as is consistent with the nature of the proceeding; but where the judicial discretion has been based on the construction it assigned to the law, and we have no ground to say that such law has been erroneously construed, it is clear that this Court should not interfere to encroach upon the functions reserved to the lower court in the exercise of its descretional powers. In our opinion, the judge may act liberally, enlightening his conscience, in so far as the nature of the proceeding will so allow. This proceeding should not be deprived of its *ex parte* character to acquire the fulness of a declaratory trial to which the interested parties are entitled, according to the code, whatever may be the decision that may be rendered.

The interested parties in this case cannot say that they have been substantially deprived of any right. All such questions as are related to the validity or nullity of the alleged will may be fully discussed in the declaratory trial. The protocolization does not work to the prejudice of any question whatsoever. The interested parties are at liberty to enforce their rights without hindrances or obstacles, in a plenary trial, until a final judicial judgment is rendered. In order to protect the rights assisting all the interested parties, our substantive and adjective laws establish ample guaranties which do not escape the wit and clearsightednes of the distinguished attorneys for the petitioners.

The writ issued must be discharged and the petition dismissed.

Mr. Justice Hutchison agrees in the result and in the greater part of the opinion, but thinks that the proceeding could have been a little more liberal in certain particulars.

CONCURRING OPINION OF MR. JUSTICE WOLF.

I doubt if the facts of the hearing were duly before us. In other words, whether the testimony taken before the court became part of the record, so as to be reviewable in certiorari. The judge should intervene before the facts may

be considered to be identified and certain. The judge here might have made some corrections to the stenographic notes, even to the point of showing the scope he gave to the petitioners. In this particular case, as the order was issued to send up the stenographic record, the consent of the judge to the correctness of the notes to a certain extent might be assumed. I still maintain that where facts, *ore tenus,* need to be added to a record, certiorari very ordinarily is not the proper remedy.

The opinion of this court, while analyzing the evidence, bases its reasoning on the fact that the real remedy of the parties is a plenary suit. This is the opinion of the commentators and is, I think, the letter of the law.

The principal object of this concurring opinion is to indicate my theory that once the court gave the parties an opportunity to make observations, the law was fulfilled. Then, any mistake of appreciation on the part of the judge could only be inquired into by a plenary suit.

Ideas similar to this were expressed in my dissenting opinion in the case of *Asociación de Padres Capuchinos de Pennsylvania en Puerto Rico* v. *District Court,* 44 P.R.R. 654. It was in this way that I thought so supplement my concurrence in the opinion of the court.